IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT COLUMBIA

| | | |
|---|---|---|
| CARLOS FARRIS<br>#391233, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:23-cv-00024 |
| | ) | |
| v. | ) | JUDGE CAMPBELL |
| | ) | MAGISTRATE JUDGE HOLMES |
| | ) | |
| DAVID BAKER, ET AL. | ) | |
| | ) | |
| Defendants. | ) | |

---

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FILED ON BEHALF
OF MAURY COUNTY SHERIFF'S DEPARTMENT**

---

Defendants, David Baker, Brandon Harris, and Roger Maddox ("County Defendants"), by and through counsel, hereby submit this memorandum of law in support of their motion for summary judgment.

**I.      PROCEDURAL STATEMENT**

Plaintiff filed suit on April 14, 2023, against a number of individuals. Plaintiff claimed that in February 2023, he requested a religious diet through Chaplain Baker.  He alleges that in March 2023, as a form of retaliation and cruel and unusual punishment, after filing grievances, Lt. Maddox and Lt. Harris fed him "unclean and unholy meat" on March 7, 2023. He claims that this was against the law of the Gnostic Hebrew which preaches a diet of fruit, vegetables, and fish only. (Complaint, D.E. 1).   On August 23, 2023, this Court entered an order (D.E. 11) and memorandum opinion (D.E. 10) dismissing Maury County Jail, but allowed claims to proceed against Trinity Food Services, Defendant Scott, and Defendant Kacy under the First Amendment.  With regarding to the individual county defendants, this Court allowed Plaintiff 30 days for Plaintiff to amend his complaint.  (D.E. 11).  After 30 days

4906-3919-9241, v. 1

with no amendment, on October 27, 2023, this Court ordered that the individual county defendants were dismissed. (D.E. 13). However, on December 7, 2023, Plaintiff filed a motion seeking permission to amend his complaint. (D.E. 17). That motion was granted (D.E. 18) and Plaintiff filed his amended complaint on December 20, 2023. (D.E. 19). At that time, Plaintiff included David Baker (the jail chaplain), Lt. Roger Maddox, and Lt. Brandon Harris as defendants in addition to naming Maury County Sheriff's Department again. *Id.* The allegations against county defendants appear to be as follows:

1. Chaplain Baker failed to provide him with an appropriate religious diet tray (D.E.19, PageID# 138);

2. Lt. Maddox and/or Lt. Harris violated his rights by:

    a. Forcing him to eat "unclean and unholy meat" on March 7, 2023, that went against his religious beliefs of eating only fruit, vegetables, and fish. (D.E. 19, PageID# 146). This seems to stem from Plaintiff's mistaken belief that the bean patties served on the special diet trays contained turkey. *Id.* at 147. (Maddox and Harris)

    b. Failing to provide hot meals during March and April while the kitchen was under reconstruction. *Id.* at 148); (Maddox)

    c. Failing to provide him with a prayer rug/oil. *Id.* (Maddox).

Summonses were issued on January 5, 2024. (D.E. 20). The county defendants were served on April 24, 2024. (D.E. 28 & 29). These defendants then filed an answer denying the allegations in this case and asserting various defenses, including qualified immunity and failure to exhaust administrative remedies. (D.E. 32). Undersigned counsel also filed a motion to dismiss Maury County Sheriff's Department (D.E. 38) which was denied as moot. (D.E. 41). Thereafter, Mr. Farris also filed a statement of punitive and compensatory damages that he claims to be seeking from the county defendants. (D.E. 57). Despite the defendants filing a motion to strike (D.E. 59), this statement was allowed as an amendment to

the amended complaint. (Order, D.E. 66). At this time, these defendants contend that they are entitled to judgment as a matter of law and, therefore, seek summary judgment.

## II.     FACTUAL STATEMENT

The Maury County Jail has a kiosk for use by inmates while they are incarcerated. (Declaration of Sheriff Rowland, ¶ 3). They are assigned credentials which allow them to use the kiosk to make phone calls, order commissary items, research using LEXIS, make inmate requests to jail personnel regarding various matters, make sick call requests to medical personnel, and file grievances with the jail staff and the administration. *Id.* After receiving credentials, inmates may sign into the kiosk for the first time. (Rowland Decl., ¶ 4). In doing so, the kiosk requires that they acknowledge the Inmate Handbook which contains the grievance policy of the Maury County Jail. *Id.* The handbook explains that all grievances must be filed within seven (7) days of an incident and that any appeals must be filed within five (5) days of a response. *Id.* There are three levels to the process, meaning that an inmate may appeal twice. *Id.* Internally, the initial grievance is typically addressed by shift sergeants when possible. *Id.* The first appeal is addressed by lieutenants and the second and final appeal is addressed by higher command staff such as captains, the jail administrators, or the sheriff. *Id.*

Plaintiff was incarcerated on May 25, 2022 for various charges, including possession of Methamphetamine. (Rowland Decl, ¶ 5). Mr. Farris's religion was noted during intake as being Christian. *Id.* Mr. Farris pled guilty to charges on March 9, 2023. *Id.* Shortly after intake, Mr. Farris was assigned credentials to be used with the jail kiosk system. (Rowland Decl., at ¶ 6). The system indicates that Mr. Farris acknowledged the inmate handbook containing the grievance policy on June 1, 2022. *Id.* Mr. Farris was also arrested on November 4, 2023 and housed at the Maury County Jail until February 6, 2024, when he was

4906-3919-9241, v. 1

transferred to the Tennessee Department of Corrections. *Id.* at ¶ 5. During that incarceration, Mr. Farris was also provided credentials and acknowledged the handbook with the grievance policy on November 7, 2023. (Rowland Decl., at ¶ 7). During the two incarcerations, Mr. Farris filed more than 190 grievances, but no appeals from any of the grievances. (Rowland Decl., at ¶ 8.

While incarcerated, inmates may see a chaplain regarding services or programs offered at the jail. (Declaration of Chaplain Baker, ¶ 3). Chaplain Baker is an unpaid support staff person working in the jail through a non-profit organization. (Declaration of Chaplain David C. Baker, ¶ 2). Chaplain Baker has no authority to make decisions on behalf of the jail nor to approve or deny religious dietary trays. *Id.* at ¶ 3. As a courtesy, Baker would often convey religious dietary preferences to the kitchen staff after verifying religious affiliations. *Id.* at ¶ 3. To accommodate religious preferences, the jail has always offered vegetarian and kosher options for inmates. *Id.* On other occasions, Mr. Farris as identified his religious affiliation as Christian, Catholic, Seven Day Adventist, Muslim, Wiccan, and most recently Gnostic Hebrew. *Id.* at ¶ 4.

Sometime after March 7, 2023, the kitchen was undergoing renovations for several weeks and meals were unable to be prepared on site by the contracted food service provider. (Declaration of Lt. Brandon Harris, ¶ 4; Declaration of Roger Maddox, ¶¶ 3, 6). The food service provider was unable to feasibly prepare the hot meals as they typically did. *Id.* Meals were prepared off site and brought to the jail. Harris Decl., ¶ 4; Declaration of Roger Maddox, ¶ 3). Neither Harris nor Maddox participated in decisions regarding what would be served during the construction, but understood the meals would be approved by the State dietician. *Id.*

On March 10, 2023, Lt. Harris received a grievance from Mr. Farris complaining that instead of peanut butter sandwiches, he wanted a grilled cheese sandwich. (Harris Decl., ¶ 4).

4906-3919-9241, v. 1

Due to the difficulty of meal management during the temporary period of renovation and issues that would arise with special treatment, Harris informed Mr. Farris that special requests could not be accommodated. *Id.* At no point did Harris believe that Mr. Farris was not getting the appropriate nutrition and a tray that accommodated his religious needs. *Id.* Mr. Farris did not appeal the response. *Id.* Harris received no other grievances complaining of a lack of hot meals nor any regarding being fed turkey in his bean patty. (Harris Decl., ¶¶ 4-7).

On March 13, 2023, Maddox received a grievance from Mr. Farris complaining that he had not received a hot meal and that he had to eat a peanut butter sandwich for every meal. (Maddox Decl., ¶ 4). He stated that when he asked for a grilled cheese, the kitchen staff sent him a sub sandwich which required him to remove the meat for his meal. *Id.* Mr. Farris again grieved on March 14, 2023, to Maddox, but was advised that it was a temporary situation and the kitchen could not provide him with a grilled cheese. *Id.* at ¶ 5. During these grievances, Mr. Farris never reported that he believed he had been served turkey in his bean patty on March 7, 2023 as alleged. *Id.* Mr. Farris did not appeal the grievance but advised that he was beginning a fast shortly thereafter. *Id.* at ¶¶ 5-6. On April 1, 2023, Mr. Farris made an inquiry with the kitchen staff asking what was contained in the bean patty. *Id.* No grievance was filed with jail staff about turkey being in the bean patty. *Id.*

With regard to Mr. Farris' prayer rug, Maddox did not have any direct contact with Mr. Farris regarding his prayer rug and has no recollection of his prayer rug being taken away by anyone. (Maddox Decl., ¶ 7). Maddox did require Mr. Farris to remove symbols that he had drawn all over the floor of the open pod and also denied a request to use open flame candles. *Id.* While jail staff had been informed that the prayer rugs were not a necessity to prayer, Mr. Farris was still allowed the use of a towel as a prayer rug. (Maddox Decl., ¶ 7). No grievance was filed with Lt. Maddox about the prayer rug being denied. *Id.* The only mention of the

4906-3919-9241, v. 1

prayer rug being temporarily removed was sent to Lt. Harris after the issue had been fixed. (Maddox Decl., ¶ 7; Harris Decl., ¶ 8).

## III. LEGAL ARGUMENTS

### A. Rule 56 Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that upon the filing of a motion for summary judgment:

> (t)he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Federal Rule of Civil Procedure 56(c).

By the clear terms of Rule 56(c), a disputed fact must be "material" to preclude the granting of summary judgment. The Supreme Court has defined the concept of materiality: "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citations omitted).

The movant must produce evidence showing that there are no genuine issues of material fact. *Celotex Corp. v Catrett*, 477 U.S. 317, 323 (1986). This burden may be met by showing "an absence of evidence to support the nonmoving party's case." *Id.* at 325. The party opposing a properly supported motion for summary judgment carries the burden to come forth with requisite proof to support its legal claim, particularly where the opposing party has had an opportunity to conduct discovery. *Id.* "The mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff." *Anderson v. Liberty Lobby, Inc., 477*

U.S. 242, 252 (1986). In this case, Plaintiff cannot establish a viable claim as a matter of law.

**B. Failure to Exhaust Administrative Remedies**

Prisoner plaintiffs are required to exhaust all administrative remedies prior to filing any civil lawsuit. The Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997, states that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The PLRA statute requires a prisoner plaintiff to exhaust all available administrative remedies before filing a lawsuit under 42 U.S.C. § 1983 in the district court. *Booth v. Churner*, 632 U.S. 731, 733, 121 S.Ct. 1819, 148 L.Ed. 2d 958 (2001); *Brown v. Toombs*, 139 F.3d 1192, 1103-04 (6th Cir. 1998). The exhaustion requirement of Section 1997e(a) is mandatory, *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007), and prisoners are required to utilize the grievance procedures before filing suit in federal court...." *Wyatt v. Leonard*, 193 F.3d 876, 877-78 (6th Cir. 1999). To establish that he has exhausted his administrative remedies, the plaintiff must show that he presented his grievance(s) "through one complete round" of the established grievance process. *Thomas v. Woolum*, 337 F.3d 720, 733 (6th Cir. 2003), abrogated on other grounds, *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). The plaintiff is unable to do so in this case.

Even if the plaintiff was transferred to another facility, it does not render the exhaustion requirement moot. *Arflack v. County of Henderson*, 2009 WL 3210604, *8 (W.D. Ky. Sept. 30, 2009). A prisoner may not abandon the process before completion and then claim that he exhausted his remedies or that it is now futile for him to do so. *See Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) (citing *Wright v. Morris*, 111 F.3d 414, 417 n.3 (6th Cir. 1997), cert, denied, 522 U.S. 906, 118 S.Ct. 263, 139 L.Ed.2d 190 (1997)). There is no

4906-3919-9241, v. 1

futility exception to the exhaustion requirement. *Booth*, 532 U.S. at 741 n.6. Further, it is well-settled that a prisoner cannot exhaust his administrative remedies during the pendency of the action he filed. *Harvin-Bey v. Rutter,* 420 F.3d 571, 580 (6th Cir. 2005); *Freeman v. Francis*, 196 F.3d 645 (6th Cir. 1999).

Farris has failed to exhaust his administrative remedies on the issues raised in his complaint. During all relevant times pertaining to this lawsuit, Mr. Farris failed to follow the administrative procedures as required by the jail. Mr. Farris did not file a grievance that he was being denied a prayer rug. He did not file a grievance that he believed he was fed turkey in the bean patty. Moreover, he did not appeal his grievances. Accordingly, all of Plaintiff's claims are barred.

### C. Individual Liability Pursuant to § 1983

Plaintiff alleges violations of his First Amendment violations against all individual defendants. While "incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain First Amendment protection to freely exercise their religion, *O'Lone v. Shabazz,* 482 U.S. 342, 348, 107 S. Ct. 2400, 96 L. Ed. 2d 282 (1987), subject to reasonable restrictions and limitations related to legitimate penological interests. *Id.* at 350-53; *accord Turner v. Safley*, 482 U.S. 78, 89, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987) (First Amendment protection extends to all religious beliefs, and guaranties "religious liberty and equality to the infidel, the atheist, or the adherent of a non-Christian [*11] faith...."); *see also County of Allegheny v. ACLU*, 492 U.S. 573, 615, 109 S. Ct. 3086, 106 L. Ed. 2d 472 (1989). To establish that his right to freely exercise his religion has been violated, Plaintiff must allege that: "(1) the belief or practice he seeks to protect is religious within his own 'scheme of things,' (2) that his belief is sincerely held, and (3) the Defendant's behavior infringed upon this practice or belief." *Fields v. Trinity Food Serv.*, No.

4906-3919-9241, v. 1

17-1190-JDT-CGC, 2019 WL 5268565, at *6 (W.D. Tenn. Oct. 17, 2019) (*quoting Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987)). To state a free exercise claim, a plaintiff must allege facts from which an inference may be drawn that the government has placed "a substantial burden on the observation of a central religious belief or practice." *Hernandez v. C.I.R.*, 490 U.S. 680, 699, 109 S. Ct. 2136, 104 L. Ed. 2d 766 (1989). No such substantial burden exists in this case. Courts consider four factors when assessing free-exercise claims in the prison context: (1) whether there is rational connection between the prison regulation at issue and a legitimate government interest; (2) whether the regulation leaves room for the inmate to exercise the right at issue by alternative means; (3) whether accommodating the inmate's exercise of his rights would impose an undue burden on prison resources; and (4) whether there are reasonable alternatives to the prison regulation. *Turner v. Safley*, 482 U.S. 78, 107 S. Ct. 2254, 2261-62, 96 L. Ed. 2d 64 (1987).

## 1. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Significantly, qualified immunity is "an *immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) (emphasis in original), *quoted by Pearson v. Callahan*, 555 U.S. at 237, 129 S.Ct. at 818. Accordingly, it is not a defendant's burden to prove that he is entitled to qualified immunity, but rather, once the defendant has asserted this as a defense, *it is the plaintiff's burden to prove that the defendant is not*. *See Clemente v. Vaslo*, 679 F.3d 482, 490 (6th Cir. 2012). "The protection of qualified immunity

applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson*, 129 S. Ct. at 815 (citing, *Groh v. Ramirez*, 540 U.S. 551, 567 (2004)). Moreover, qualified immunity is a question of law for the court to decide. *Sample v. Bailey*, 409 F.3d 689, 695 (6th Cir. 2005); *Gardenhire v. Schubert*, 205 F.3d at 310.

The appropriate analysis for qualified immunity was summarized by the Sixth Circuit in *Clemente v. Vaslo* as follows:

> The Supreme Court has laid out a two-step inquiry to determine if qualified immunity protects an official's actions: (1) whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right[]," and (2) whether that right was clearly established. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), *overruled on other grounds by Pearson,* 555 U.S. at 236, 129 S.Ct. 808).

*Clemente v. Vaslo*, 679 F.3d 482, 489 (6th Cir. 2012). Additionally,

> Because qualified immunity shields reasonable conduct, even when it is mistaken, the Sixth Circuit has at times added a third line of inquiry to the traditional two-part test: "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Peete*, 486 F.3d at 219; *cf. Everson v. Leis*, 556 F.3d 484, 494 n. 4 (6th Cir. 2009) (stating regardless of whether the two-prong or the three-prong test is applied, "the essential factors considered are [] the same"). "[I]f officers of reasonable competence could disagree [on the legality of the action], immunity should be recognized." *Malley,* 475 U.S. at 341.

*Wright v. City of Chattanooga*, Case No. 1:10-CV-291, 2012 WL 28744 (E.D. Tenn. Jan. 5, 2012) (slip copy) (brackets in original; quoting *Peete v. Metro. Gov't of Nashville & Davidson Cnty.,* 486 F.3d 217 (6th Cir. 2007), and *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

As to what constitutes a "clearly established right" for purposes of this analysis — an issue of central importance in most qualified immunity cases — the *Clemente v. Vaslo* court explained:

> For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). "It is important to emphasize that this inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen,* 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004). "The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *Ashcroft v. al-Kidd,* U.S. 2011, 131 S.Ct. 2074, 2084, 179 L.Ed.2d 1149 (2011). Thus, "[t]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz,* 533 U.S. at 202, 121 S.Ct. 2151.
>
> "We look first to the decisions of the Supreme Court, and then to the case law of this circuit in determining whether the right claimed was clearly established when the action complained of occurred." *Gragg v. Ky. Cabinet for Workforce Dev.,* 289 F.3d 958, 964 (6th Cir. 2002). "[T]he case law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances*." *Id.* Plaintiffs bear the burden of showing the claimed right was clearly established. *Everson v. Leis,* 556 F.3d 484, 494 (6th Cir. 2009).

*Clemente v. Vaslo*, 679 F.3d at 490 (internal citations, ellipsis, quotation marks omitted; emphasis in original). These defendants are entitled to qualified immunity based on the evidence in this case. Plaintiff cannot establish that their actions constituted a violation of his rights, that his right was clearly established in this matter, and in the particularized circumstances of this case, these defendants' actions were objectively unreasonable. Accordingly, summary judgment is appropriate for all federal claims.

4906-3919-9241, v. 1

## 1. NO CONSTITUTIONAL VIOLATION

To prove a § 1983 claim, the Plaintiff must establish (1) the deprivation of a right secured by the Constitution or laws of the United States; and (2) that the person causing such deprivation was acting under color of state law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155 (1978). As a general rule, a plaintiff must allege that a constitutional deprivation was intentional. *Davidson v. Cannon*, 474 U.S. 344, 348, 88 L. Ed. 2d 677, 106 S. Ct. 668 (1986). Mere negligence is not actionable under § 1983. *Chesney v. Hill*, 813 F.2d 754, 755 (6th Cir. 1987). Also, conclusory, unsupported claims of a constitutional deprivation are insufficient to state a claim. *Lanier v. Bryant*, 332 F. 3d 999, 1007 (6th Cir. 2003). In this case, Plaintiff is unable to prove that he suffered a deprivation of any right as a result of the actions of any of these defendants.

### a. Chaplain Baker

The only allegation against Chaplain Baker pertains to whether he denied Farris a religious diet tray. However, the evidence is clear that Chaplain Baker is not actually an employee, but rather a volunteer chaplain who has no authority over the meals that are served within the jail. Plaintiff claims that in February 2023, he requested a religious diet tray. (D.E. 19, PageID# 146).[1] He then claims that in March 2023, he was fed "unclean and unholy meat" by Maddox and Harris and that a corrections officer informed him that the soy meat patties actually contained turkey. *Id*. at 146-147. This is untrue as the patties are bean patties servd on vegetarian trays within the jail. Importantly though, this does show that Plaintiff was provided with a religious diet tray and Chaplain Baker did convey the need for a religious diet tray to the kitchen. The irrefutable evidence is simply that Chaplain Baker did not possess the

---

[1] Plaintiff's complaint references only "Feb." However, given that Plaintiff was not incarcerated until May of 2022 and the complaint was received by the Court in December 2023, it is clear that Plaintiff refers to February 2023.

authority to order specific meal trays within the jail or require the kitchen staff to prepare particular meals for Mr. Farris.

### b. Lt. Maddox and Lt. Harris

#### i. Meals

Plaintiff essentially complains that Maddox and Harris forced him to eat "unholy" and "unclean" meat on March 7, 2023. However, this is simply untrue. First, Maddox nor Harris had any information that the patty served with the vegetarian meal contained any turkey. Plaintiff alleges that a corrections officer told him that the patty contained turkey without any evidence that the patty actual contained meat. Second, if the patty was inadvertently mixed up in the kitchen and Plaintiff was served turkey, this was completely without any knowledge or action on the part of these defendants. As such, they are entitled to qualified immunity. Furthermore, one incident of a mix up would not be sufficient to constitute a constitutional violation in this case. Finally, as previously addressed, Plaintiff filed no grievance regarding this issue. As such, this claim must be dismissed.

Plaintiff also argues that Maddox refused to provide him with hot meals during the kitchen renovation. As the facts make clear, this was a temporary inconvenience due to the kitchen being renovated and meals having to be brought in from outside the facility. However, Maddox did not participate in the decision regarding the meals to be served. Mr. Farris failed to grieve this issue to those of higher command and the claim as to Maddox should be dismissed.

#### ii. Prayer rug/oil

Plaintiff finally contends that Maddox violated his rights by denying him a prayer rug. Not providing inmates with prayer rugs may support claims under the Free Exercise Clause. *See Bohanen*, 2022 U.S. Dist. LEXIS 221613, 2022 WL 17494620, at *4 (allowing

prisoner to proceed with Free Exercise Clause claim based on alleged deprivation of a prayer rug for Islamic religious practices); *see also Byrd v. Haas*, 17 F. 4th 692, 695, 700 (6th Cir. 2021); *Pleasant-Bey*, 2019 U.S. App. LEXIS 33459, 2019 WL 11769343, at *6. However, in this case, Plaintiff was not denied a prayer rug and there is no evidence that Maddox ordered or participated in the temporary denial of Plaintiff's prayer rug. Again, no grievance was filed regarding this matter and it appears to have been quickly rectified as the only indication to any defendant about this matter was one grievance to Harris, after the fact, articulating that it occurred. However, at the time of the grievance, Mr. Farris had the return of his prayer rug approval. As such, this temporary incident is insufficient to state a constitutional claim. However, the evidence does not support that Maddox had a part in the denial of the prayer rug and should be dismissed.

## 2. NOT CLEARLY ESTABLISHED

The second prong of the qualified immunity analysis requires an inquiry into whether the alleged constitutional violation involved a clearly established right that the official would have known. A defendant cannot be held to a standard that has never before been articulated. *See White v. Pauly,* 137 S.Ct. 548, 552 (2017) (holding that a plaintiff must "identify a case where an officer acting under similar circumstances …was held to have violated [the Constitution]" in order to present a clearly defined constitutional right). While an inmate's right to reasonable medical care or to be safe from known risks cannot be denied, what is not clearly established in this case is that there was a duty to act and do more under the particular circumstances of this case. Mr. Farris was receiving a religious diet tray. He did not like that he temporarily had to eat peanut butter or sub sandwiches during the kitchen renovation which lasted several weeks. He baldly alleges that he was served turkey in his meat patties, but this fact is denied. Finally, he baldly asserts that he was unconstitutionally denied a

prayer rug. The facts show that this was temporary at best. Under the circumstances, Mr. Farris cannot show that his rights were clearly established and the defendants are entitled to qualified immunity.

### 3. OBJECTIVELY REASONABLE

Finally, the plaintiff cannot establish that the alleged actions of these individual defendants were objectively unreasonable given the circumstances. Giving them the "benefit of the doubt," it would not have been apparent to any of them that they were violating anyone's rights under the particular circumstances of this case. *Dickerson v. McClellan,* 101 F.3d 1151, 1160 (6th Cir. 1996). Accordingly, the plaintiff is unable to establish that these defendants should be denied qualified immunity.

## V. CONCLUSION

Based upon the foregoing, these defendants respectfully request that they be granted summary judgment as to all claims against them in this matter.

Respectfully submitted,

*/s/ Robyn Beale Williams*
Robyn Beale Williams, BPR #19736
**FARRAR | BATES | BEREXA**
12 Cadillac Drive, Suite 480
Brentwood, Tennessee 37207
Phone: 615-254-3060
Fax: 615-254-9835
rwilliams@fbb.law
*Counsel for Roger Maddox, David Baker, Brandon Harris*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this the 20th day of December, 2024, a true and correct copy of the foregoing has been forwarded via the Courts electronic filing system or US Mail, to:

Carlos M. Farris
#391233
2520 Union Springs Rd.
Whiteville, TN 38075
*Pro Se Plaintiff*

Alexander B. Chosid
TKC Holdings
1260 Andes Boulevard
St. Louis, MO 63132
Phone: 314-214-2218
Alex.Chosid@tkcholdings.com
*Counsel for Trinity Food Services*

Sean C. Wlodarczyk (#30410)
EVANS, JONES & REYNOLDS
401 Commerce St. Ste. 710
Nashville, TN 37219
Swlodarczyk@ejrlaw.com
P: (615) 259-4685
*Attorney for Defendant Trinity Food Services*


*/s/ Robyn Beale Williams*
Robyn Beale Williams

4906-3919-9241, v. 1